on behalf of American Bank Holdings. Thank you, Your Honor. May it please the Court, Albert Mezzanotte on behalf of American Bank Holdings. First, I'd like to thank the Court and the Clerk's Office for accommodating counsel and the parties, given the horrific weather that we encountered. And so we very much appreciate the Court changing its schedule to accommodate us. This case involves an insurer denying a clearly covered loss under the policy, based on technical defenses that are insufficient in our judgment under Maryland law. If not reversed, the result here is that a policyholder that paid more than $380,000 in premiums will lose all benefits of the litigation insurance that it paid for, a result that is not only contrary to Maryland law, but plainly unjust. Now, the factual and procedural background of the case, this litigation has consumed about seven years, is set forth at length in our briefs. But a few things bear highlighting. First, no one at ABHI knew of the existence of the Quido lawsuit until Quido filed judgment enforcement papers in Maryland in February of 2009. Once that happened, ABHI promptly notified St. Paul. They engaged counsel and they pursued overturning the default. Pardon me, Your Honor? Is that a relevant fact? I mean, vis-a-vis the insurance company, you were sued eight months earlier, served eight months earlier, and not until after a default judgment and you started going back did they learn of it. Now, from their point of view, they can hardly be concerned about the internal management of the company. I mean, you got served by CT, CT sent it down to your vice president's desk, he was gone, and it sat there. But you were served in accordance with the way it specified and received notice, constitutional notice at that point, through your agent. From the insurance company's point of view, how you set up your internal management isn't a concern. They have a policy where they say you have to notify them as soon as practicable, no later than 60 days after the termination of the policy. And that didn't occur. And you say that's unjust. I'm trying to figure out why it would be unjust if that was the circumstance. Well, several pieces in response to your question, Your Honor. Number one, the rules of procedure are worded entirely differently than this insurance policy. And I will concede, under the rules of procedure, which say you have X days to answer or respond once you or your designated representative are served. There's no flexibility there at all. But the language of this policy, the notice provision is about three paragraphs long. And Your Honor focused on the as soon as practicable, but no later than 60 days after the expiration of the policy year. But if you go on, it describes in detail what the insured is required to do. And that clearly requires actual knowledge, not constructive notice. There's nothing in the policy that says when your representative is served or within X days of receiving a summons or anything that it could have said that would inform the decision that they made. All it says is we have to give notice in that policy year plus 60 days, which in this case would be... That's the way your brief says it, but it's one period. It says as soon as practicable, but in no case later than. It's a single period, which is as soon as practicable, cut off in an absolute sense by 60 days after the termination of the policy. It doesn't say as soon as practicable or 60 days after. It says as soon as practicable, but in no case later than. Well, the court is correct in reading the language. However, you don't read language in an insurance policy in a way that is coverage defeating. You do just the opposite. And that's what Maryland law has always required. In addition, the outer deadline, which was November 29, 2008, is what they specifically cited in their denial letter. It's what they specifically cited in the declaratory judgment that they filed. And I specifically refer the court to paragraph 29 there, which says that, as do other paragraphs, but that one sticks out. So November 29 is the date that they relied on and told us was the reason for the denial. Now, they didn't issue any reservation of rights letter before that. And if you look at the record and their conduct, they were, in fact, contemplating defending the case and issuing a reservation of rights letter. That's what the original adjuster on the file was doing. It wasn't until they did some Googling and found out that this guy, Quido, was a very, very bad actor. Thereafter, the original adjuster was reassigned, a new adjuster put in his place, and the reservation of rights letter, which would have supported the defense, was not issued and instead a denial letter predicated exclusively on the end date for notice. Isn't it fair to hold a corporation or a company to a higher standard of notice than an individual? Because an individual defendant or whatever, they know to give an insurance company notice, but they're also laypersons. And here you're talking about a corporation that is supposed to appoint agents for the express purpose of service or process. And the whole contract contemplates what essentially is a joint and cooperative defense where the insurer has a right to consult and participate in the defense and in the choice of counsel and in settlements. And so under these circumstances, the cooperative nature of the defense and the fact that we're dealing with a corporate defendant in a suit rather than an individual defendant, aren't we entitled to hold a corporate defendant to a more rigorous standard of notice in these circumstances? Well, I would respectfully respond, no, Your Honor. As far as I'm aware, there is nothing in Maryland law that would hold a corporation to a higher standard and require anything other than interpreting the policy language the way a reasonably prudent layperson would. No, but where you have language that doesn't, where you have both in this policy, language which sets a deadline depending on the year that the coverage ends and also the as soon as practicable language, but where you have language which is open to as soon as practicable, why wouldn't the district court have been able to take into account, given that language, which is a sort of a reasonableness language, the fact that you're dealing with a corporate defendant here, that corporations know what service or process is all about. They know to notify the insurer. This is stuff that, that's why corporations have agents. Your Honor, you're absolutely correct. That is, and under the rules of procedure, there is not that flexibility. But when one looks at this insurance policy, and again, hearkening back to we must read it in a way that a reasonably prudent layperson would understand the plain meaning of the words. Why should there be this dramatic divergence between the way we read a policy and the meticulousness required by the rules of civil procedure? Well, I mean, they didn't incorporate by reference the rules of procedure in a state in which you're doing business or you're sued. You can do that, but they didn't. Well, they did define a claim. They said as soon as practical after a claim. And then they define the claim as a thing. A single proceeding against any insured commenced by the service of a complaint. That is correct. The service of the complaint was effected in this case. That is correct as well. But they defined the definition of a claim in the policy. They defined what a claim is, but they haven't defined what you must do upon receipt of a summons. They haven't defined whether... As soon as practical, you have to provide the insurance company notice. If you don't know about it, is it practicable to... The policy says you know about it. What if you set it up to have CT give it to the head secretary of the secretarial pool? And the head secretary, three weeks later, quits or is gone. And her desk, they're piling these service of process suits on her desk and you don't do anything about it. You were served with the complaint. Not only served at CT, but served on the corporate officer by CT. And it was on his desk and had nobody covering his desk. The policy defines the time period running from a claim. And the claim is defined by when you get service of the proceeding. Your Honor is correct as to the definition of a claim, but I respectfully disagree on the policy's admonitions with regard to what must happen thereafter. It is not akin to the rules of procedure. And actual notice versus constructive notice... I'm sorry, Your Honor. Let him ask his question. Counselor, when we look down to the road, for eight months you did nothing. And would we be establishing a rule that you can sit on your rights and do nothing for an eight-month period and that that's reasonable or practicable behavior? I mean, it really just lets companies give notice to insurers whenever they kind of feel like it. I mean, this wasn't something that was a day late or a week late or a month late. It was eight months and nothing happened. And you always have to look down the road and ask what kind of thing you're setting up. Were we setting up an eight-month rule? Well, Your Honor, in fact, the cases that we've cited from Maryland involve notice that occurred much, much later than what happened here, years later. The question is, as a result of the late notice, has the insurer been actually prejudiced? Here, according to St. Paul, we could have given notice on November 29, 2008, and the policy would have permitted the defense to go forward. If that is true. Let me just ask you, changing subjects briefly, because I want to catch you before you sit down. The policy, as I understand it, provided coverage for reimbursement or indemnity for liability and, in some cases, for defense. With respect to this claim, it provided just reimbursement for liability, but not for the defense. The cost of defense had to be borne by the insured, although the insurance company might be called upon to advance the monies during the defense, and they get reimbursed. But just assume for a moment right now that the coverage of the policy is for liability and defense. It turns out there is no liability and never will be. Isn't this now a situation that's moot, that since the policy covers, you have to bear your own defense on this type of claim, defense costs? Why isn't this case moot now? Because that's all that's at issue. It is not moot, Your Honor. The definition of loss includes defense costs. This is a loss reimbursement policy. Not a fair reading. I mean, the policy provides defense in some cases and doesn't provide defense in others. But in this case, it provides no defense. I disagree, Your Honor. And, in fact, this policy says they are required to advance the monies until it's determined that there is no coverage. And I see my time is up, and thank you. Go ahead. You can finish, but you're answering this question. It surprises me you say that you get your defense costs in this case. There's an explicit checkmark that says the insured shall provide the defense. No. The insured must retain defense counsel under the, quote, box that's checked for duty to defend. But this is a policy that covers loss, quote, unquote, as defined in the policy. To defend. In the case where the insurer is defending, of course that's going to be part of the loss. But the policy clearly doesn't provide for your defense costs. I respectfully disagree. If you look at what the policy covers under, this is a Lending Act liability policy. It fits the definition for coverage. It covers loss as a result of a Lending Act. Loss is defined as not only the indemnity for the liability, but the defense costs as well. And I respectfully suggest to the court to look at that definition. I've looked at that. I don't know how you explain the declaration page which provides the types of claims where you have to bear the costs of defense and where the insurer has. And this one is Banker's Professional Liability Insuring Agreement, which is the loss you're covering. And it says here the duty of the insured is to defend. To hire defense counsel. And loss requires that they reimburse us. You didn't read that paragraph either because that paragraph says until it determines whether the claim falls under your responsibility or theirs. In this case, it clearly falls under your responsibility because that's the nature of the claim. And in that case, it says you have to reimburse the insurance company for the cost. Your Honor, I respectfully disagree with that conclusion. And I simply note that St. Paul has never argued that to this day. So I believe that the defense costs are reimbursable. I've far exceeded my time. Thank you. Thank you, Mr. Judge. Before you get started, Mr. Judge, just a fundamental. Do you read the policy of having the insurance company provide the cost of defense? Your Honor, may it please the Court. Thomas Judge on behalf of the Pell and St. Paul Mercury Insurance Company. Your Honor, I hate to start my argument by agreeing with Mr. Mezzanotte, but the way the policy does work is that for professional liability, the insured ABHI did have the duty to defend, which included selecting defense counsel and running a defense and mounting a defense. But then what the policy becomes in that situation, Your Honor, is a reimbursement policy so that St. Paul covers covered loss. If the claim is covered, it covers the loss resulting from that claim, including defense costs that are incurred by ABHI. So what's different, and Mr. Mezzanotte is correct about this, is that when you have the insurer has the duty to defend, the insurer gets to select defense counsel, it pays defense counsel directly, and those costs are paid directly by the insurer. What's the reimbursement? The reimbursement of costs when the defense is provided by them. There's a provision here that says costs are not covered under the policy. The insured, severally according to their respective interests, agree to repay the insurer's such defense costs. Right. In the event that the claim is ultimately determined not to be covered, there are certain exclusions in the policy that are contingent on the outcome of the underlying case. For example, there's a fraud exclusion and a profit exclusion that require an adverse adjudication against the insured to trigger those exclusions. That provision that you just read comes into play if and when there's that adverse adjudication. If the insurer has been advancing defense costs, even in a situation where the insured has the duty to defend, the insurer can seek reimbursement if the claim ultimately turns out not to be covered. All right. If the attorney's fees are part of the covered loss, at the end of the, along with whatever judgment there is, I assume attorney's fees are part of the covered loss. That's right, Your Honor. And that's what here, whereas Your Honor was pointing out, this was that the insured had the duty to defend. They had to select defense counsel, they had to mount a defense, but the insurer had the right to associate in the defense, to monitor the defense, to participate in substantive decisions about the defense, including the drafting of substantive motions, and to approve defense counsel. And what happened here is that none of those, St. Paul was never given the opportunity to exercise those rights at a critical juncture in the underlying case. And instead, what was originally a frivolous lawsuit became Bethel Company litigation, in which ABHI then spent nearly $2 million defending to vacate the default judgments that, and it's undisputed, that were entered through nobody's fault other than ABHI's. That's the prejudice, both in terms of the fact that ABHI breached its duty to defend by not retaining defense counsel, not having someone appear and submit some sort of response to the underlying complaint in a timely manner, or even somewhat late manner. As Your Honor said, it was close to eight months. There was no activity whatsoever. They breached the duty to defend, and they breached the provision that required them to provide notice to St. Paul. And as Judge Niemeyer pointed out, the policy is absolutely clear. It's not ambiguous. And there's no need to give any benefit of the doubt to anybody or to treat any insured differently, because the policy is clear when the duty arose to defend and when the duty arose to give notice. Is a default judgment automatically a breach of the duty to defend? We don't have to reach that notion here, I mean, reach that point here, Your Honor. And I would not say that it would definitively be a breach of the duty to defend if it can be readily rectified and cured. I mean, suppose the response to the complaint or the answer is done 10 days after the deadline set by the civil rules. That would, maybe there would be a default judgment entered, but would an answer that was 7 to 10 days late be a breach of the duty to defend? It depends on the facts and circumstances of each underlying case, Your Honor. In some jurisdictions, a short delay like that may result in a clerk's entry of a default order, which is completely temporary and normally readily fixed by some petition to the court. Here, in this jurisdiction, by not responding in a timely manner, ABHI was susceptible to a default judgment. Once that default judgment was put in for $100 million, the plaintiff's focus completely switched, dismissed the 10 other defendants, and focused all his energies on trying to enforce that judgment and trying to, if best he can, extort a multimillion-dollar settlement. So we're not suggesting or arguing that this case presents the question that any time you have a default order or a default judgment that there's a definitive breach. Here there was a material breach given the time delay and the absolute failure to respond. So the answer lies in the term materiality. Materiality and also cure. If, for example, an insured faces a default order and files an answer within 7 days of the deadline, and consults with the plaintiff's lawyer and gets a consent ruling vacating the default order, there's a cure. And whatever cost they spent curing that initial breach is on the insured properly. But then the case can go on. The insurer is given a clean slate. And this is sort of like the wood fin case. Once you give the insurer the clean slate to start, no harm, no foul. You're back exactly where you were. We've taken care of the default judgments. That's on us. We fixed it. How many commercial liability policies are written in this fashion, where there's a sort of bifurcated or qualified duty to defend? You know, most of the insurance policies we see, not only in the individual policy realm, but also in commercial liability policies, the duty to defend, the duty to indemnify are both whole in and unto themselves. They're not bifurcated or split. Here we have sort of a bifurcated or joint duty or whatever to defend, which is ‑‑ it struck me as a bit unusual. I haven't run across many of them. Is this customary in commercial insurance? It's customary, Your Honor, in a specific line of commercial insurance, which is management liability insurance. So for public ‑‑ really started with public companies. They would have claims made, director and officers insurance. And these big companies did not want the insurance companies guiding the defense through their own lawyers, and they wanted to be able to select their counsel. And so it started largely in what is D&O insurance, management liability insurance. This policy is actually a composite policy. In other words, these things are at the instigation of the insured. Correct. And what is odd about this policy is that normally the insureds elect to defend themselves management liability claims, which is one part of the policy's coverage. The professional liability, errors and omissions, which is almost like lawyers' errors and omissions or accountants, normally the insureds elect to have the insurer defend those. Here, the insureds elected to have the insurer defend management liability claims but elected to defend professional liability claims. So that is, in my experience, somewhat unusual. But I do want to make clear that it's not a joint duty to defend. The duty to defend rests solely with ABHI. The insurance company is given rights to associate in the defense. Let's assume just for round numbers, they spent $2 million to get rid of the default judgment, and then they spent some money to address the jurisdictional issue. Is it your position that all of those costs are now their bill, or is it just the amount of money spent to set aside the default judgment? Well, if we could deviate out the way you did, Your Honor, where they spent a certain amount of money vacating the default judgments, and then we had the clean slate and we addressed personal jurisdiction as we would have from the start of the case, then we could, from terms of prejudice, we could bifurcate that and say, look, you gave the clean slate. The cost of vacating the default judgments is yours. We'll pick the case up from here. Well, I thought your answer would be that once they breach the condition of notice, you have no further duties under the policy, and therefore you wouldn't even have to pick up the jurisdictional costs. Well, in this case, that's exactly how it works, Your Honor, because there was no way to separate out the personal jurisdiction issue. You could separate it out. If they gave you a bill that broke it out, it seems to me that your argument, I think, is that they're not entitled to coverage because the condition for any coverage was forfeited by their failure to give notice as soon as practical. That's absolutely right, Your Honor. I mean, it's an absolute condition precedent. To the extent there... I thought it was an argument in the alternative, that the first argument was exactly as Judge Niemeyer has expressed it, which is that the duty of notice was in itself a material breach which nullified any obligation of coverage. And then alternatively, given the way the duty to defend was structured in the policy where the duty to defend fell predominantly on the insured but with participatory and consultative rights on the part of the insurer, that that was likewise a breach. The way I construed your argument was that you were arguing there were two breaches. One, a breach of the duty to defend, and the other, the breach of notice. The breach of the duty to defend is you didn't expect to be socked with a $100 million judgment or $2 million in attorney's fees. So that led to very consequential effects for you. But I thought you were making an argument in the alternative. And you're right, and I apologize if I'm not explaining it clearly enough. But under the late notice provision, it's a conditioned precedent to coverage. They had to give notice, as Judge Niemeyer pointed out, as soon as practicable and in no event later than 60 days after the expiration of that policy year. They did not comply with that provision at all. And it is our position that by breaching that conditioned precedent to coverage, there is no coverage due to the late notice. End of story. To the extent, however, that the court finds that there has to be proof of prejudice, we think proof of prejudice abounds here, as Judge Titus so found. But proof of prejudice wouldn't lead to an affirmative judgment for them getting part of their costs back. Proof of prejudice only confirms that you can rely on the conditioned precedent. You can't rely on a conditioned precedent under Maryland law unless it's prejudicial. If once it's proved, demonstrated to be prejudicial, then the condition is in place and it doesn't allow any further coverage. Agreed, Your Honor. Agreed. We were prejudiced, when I say we, St. Paul was prejudiced by being prevented at a critical juncture of the credo action to come in, present stand-alone defenses, without a $100 million default judgment hanging over its head, and without the judge being able to use that as a means to keep the case alive, and a means for Mr. Credo to keep the case alive, where the question turned on the diligence of ABHI in responding to the credo action complaint. And on that issue, they were bound to lose. So those issues all got combined together. An international law firm of Sidley and Austin had to be retained to present the arguments, given the bet-the-company nature of the litigation at that point. But further, they had to defend multiple cases in multiple jurisdictions now, seeking to enforce the default judgments. Let me ask you, I have a couple of questions going to their estoppel argument. They assert you're estopped to assert any coverage defenses. Obviously, there's a dispute of fact as to whether or not the bank was told there was coverage or not. They say we were told. You say they were not. They say we were also instructed not to pursue settlement negotiations, but to promote a vigorous defense. What's your best argument that, in spite of there being a dispute of fact, that you're entitled to summary judgment on that issue? What there's no dispute about, Your Honor, is the fact that there was no detrimental reliance. The facts are undisputed that ABHI drafted the petition to vacate and incurred over $200,000 in fees before even giving notice to St. Paul. Then, it was just 45 days later, after giving notice to St. Paul, that St. Paul denied coverage. And contrary to what Mr. Mezzanotte says, a reservation of rights letter was issued the first day notice was given to St. Paul. Well, they say, you know, we did not pursue settlement because of what you told us. And so what disputes that or what shows that's, I guess, untrue? It's not untrue. They didn't pursue settlement then. More importantly, after that 45-day period, they didn't pursue settlement after the 49th. How does that defeat summary judgment? That makes a good jury argument. But how is that relevant to the summary judgment standard? Because they cannot prove detrimental reliance under that circumstance. They said they did it. They said we didn't pursue settlement. No reasonable jury in the court as the gatekeeper on this has to make a determination as a matter of law when a 45-day period from the date of notice to the date of the denial letter, included with a reservation of rights letter, and no activity, no efforts to pursue settlement after the denial of coverage is issued, there is no reasonable basis for a jury to find detrimental reliance in that circumstance. You would say the evidence is so overwhelming that what they swear cannot possibly be true. It's not that the evidence is overwhelming. It's that there's no evidence to the contrary. Their testimony is the evidence to the contrary. Their testimony is only that we didn't pursue settlement in this 45-day period. What they're not disputing is that they never pursued settlement after the denial of coverage, and there was no reason for them not to do that if they were otherwise inclined to do it before the denial. Furthermore, Your Honor, what's also true is their estoppel argument is framed in an either-or, meaning on that second day after we gave you notice, you either had to tell us it was covered or tell us it was not covered. The fact is that St. Paul had issued a reservation of rights, and under a reservation of rights, ABHI has not explained what it would have done if it was a reservation of rights rather than a denial of coverage. Furthermore... So even after you had made it unmistakably clear coverage was denied, they still did not... They did not pursue settlement. And furthermore, Your Honor, there is no evidence whatsoever that Mr. Quito would have entertained a settlement at a number that ABHI would have paid. There have been no efforts to create that sort of evidence. That's quite speculative, isn't it? What evidence is there in the record of that? There is no evidence. That's what I'm saying. They have the burden of showing detrimental reliance. They would need to show that they had an opportunity and would have taken the opportunity to settle with Mr. Quito in that 45-day window. There is no evidence of that, and in fact, the evidence that is available is that Mr. Quito demanded $10 million after he had the default judgments, and he never came down below the $10 million. Thank you. Counsel repeatedly sets up a straw man that St. Paul has always argued that the only late notice that mattered was the notice that was given after November 30, 2008, and that this as soon as practicable argument was something new created on summary judgment reply. That's simply inaccurate. You sort of contributed to that. You sort of talk about two dates, and the policy has one time period, which they describe as as soon as practicable but in no event later than 60 days, so that they're describing a single time period and capping it at in no event later than 60 days. And so it's always as soon as practicable, but even that doesn't go on forever. It goes on only to 60 days. Correct, Your Honor. And I would just very quickly note that St. Paul's interrogatory responses all the way back in 2009 said, and this is on Joint Appendix 1387 and 1388, and, Your Honor, I just went into the red. May I finish this, or would you like me to sit down? Go ahead, briefly. Okay. There was no coverage for the CUIDO claim because it was not first reported to St. Paul within 60 days of the expiration of the policy year in which the claim was first made and was not reported as soon as practicable. Defendant also has the duty to defend claims under the policy and to cooperate with plaintiff by providing timely information regarding claims. Defendant breached those duties by failing to defend the CUIDO lawsuit and provide information to plaintiff, that's St. Paul, prior to entry of the default judgments in the CUIDO lawsuit. Plaintiff is not required to prove prejudice due to untimely reporting, but the fact is that plaintiff was prejudiced. Default judgments totaling almost $100 million were entered in the CUIDO lawsuit long before plaintiff ever received notice of the claim. That's the argument, and that's the argument you would see, and they contend that we didn't make this argument on summary judgment, but we absolutely did. It's on appendix pages 471 to 477. The whole argument is premised on the notion, if you had given St. Paul notice in a timely manner, we could have avoided the default judgments, we could have brought in immediate substantive meritorious defenses seeking early dismissal of the CUIDO action. No further questions. Thank you for your consideration. Mr. Judge, Mr. Azamati. Thank you, Your Honor. First, even if notice is untimely, clearly you have to demonstrate actual prejudice. Actual prejudice has been discussed in a number of Maryland cases, but a case that says increase in defense costs alone constitutes actual prejudice doesn't exist. All of the cases talk about the loss of opportunity to affect the outcome of the case. Here, there was no loss of opportunity. If St. Paul had researched, which they didn't, whether there was an ability to sustain that default, they would have concluded 100% that there was no way that that judgment could stand. One, there was no personal jurisdiction. Two, the procedural underpinnings for that judgment were entirely contrary to the Illinois Rules of Procedure. They could have attacked it just as we did. They could have spent less money and hired different counsel. That was their prerogative. They chose not to. Let me ask you, what is at issue right now from your point of view? What are you asking for? We are asking for our defense costs, and we are asking for a trial. The number is $2 million. Is that what you're asking for? I can't give you the exact figure off the top of my head, Your Honor, but it's a substantial amount, something in the neighborhood of $1.5 million. Even for setting aside the default judgment, all those costs? Yes. Yes. And, you know, if the court is inclined to go in the direction that St. Paul is suggesting, I would respectfully ask that this case be sent to Maryland to be decided by its highest court, because in my view, most respectfully, this would be a radical departure from the existing case law in Maryland. What we have here, if this case is reversed, I do think we're entitled to a trial on the waiver of estoppel issue. There is a dispute of fact on that, but that is only if the court concludes that we're not entitled to judgment as a matter of law on late notice. This duty to defend was created five years after their denial letter. It wasn't in their denial. It wasn't in anything. It was in an amended complaint filed in 2014 as a result of the fact that the Sherwood Brands II decision made clear that the actual prejudice requirement applied not only to claims made policies, but to claims made and reported policies as well. Their argument prior to that had been that this is a claims made and reported policy, not subject to the actual prejudice requirement under an unreported decision from this circuit. We never agreed with that position, and I don't even think it's a claim made and reported policy. But if the court is indulging this idea of defense costs being actual prejudice, that's a fact question too. As they point out themselves, the extent of the prejudice, i.e., the increase in cost between what they would have spent and what we spent, is something that has to be decided by a trier of fact, as was the case in Woodfin, by the way. They haven't put in any evidence that would support their claim that we're not entitled to our defense costs. So this was a case in which St. Paul was resolute in deciding to deny coverage, and the litigation was a constant search for a new reason. The date was always November 28th, and here's the thing. If timely notice would have been November 28th, 2008, there is no difference in the circumstance that existed then. The policy doesn't say that. The policy said that's the cutoff date for as soon as practical. Well, Your Honor, that's your interpretation. Their own interpretation, as reflected in their denial letter, was that date. You can't change the policy just by some twist of the words. I mean, they really are taking the position in their answers to interrogatories, as pointed out. They said that they were prejudiced by the default judgment, not getting notice before the entry of the default judgment, which is not as soon as practicable. But I don't know why you won't accept the language of the policy, the clear language says as soon as practicable, but in no event later than 60 days. And that, to me, is one time period defined by two aspects. One, it has to be as soon as practicable, and second, it can't go any longer than 60 days. Well, again, their own witnesses, their own letter say to the contrary. I read the language that if you give notice by November 29th, 2008, that is timely notice. Even if it's shown that that wasn't as soon as practicable? Even if it's shown that it's not as soon as practicable. And that's what their witnesses say, their 30B6 witness, their claims representatives, that's what they've been saying, not only in their denial letter, but in their first summary judgment, in their complaint, in their amended complaint, and up to their reply brief in the underlying proceeding. With that, I respectfully ask that the court reverse this decision and enter judgment in favor of ABHI, or in the alternative, reverse and remand for a trial on the factual issues. Thank you. Thank you. I'll ask the clerk to adjourn the court, and then we'll come down and recouncil.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Paul V. Niemeyer